IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

STEVE BOSTON                                                                    PLAINTIFF

v.                                        Case No. 6:19-cv-6029

SHERIFF MIKE McCORMICK,
in his official capacity;
CORPORAL TERRY THREADGILL,
in his individual and official capacity;
DEPUTY JON. F. LANE, SR., in his
individual and official capacity; and
CORPORAL JEREMY J. SIMPSON, in his
individual and official capacity.                                          DEFENDANTS

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 32).

Plaintiff filed a response. (ECF No. 39). Defendants filed a reply. (ECF No. 42). The Court finds

the matter ripe for consideration.

## I. BACKGROUND

On May 4, 2016, Plaintiff Steve Boston called the Garland County Sheriff's Department

to report a trespasser on his property. (ECF No. 41, p. 1). When Defendants Deputy Jon Lane and

Corporal Jeremy Simpson arrived at Plaintiff's property, they observed the purported trespasser,

Joseph Bernard Major ("Major"), by his vehicle. (ECF No. 41, p.1). Plaintiff states that Major's

vehicle was entirely on his property. When Defendant Lane interviewed Major, he discovered that

Major was a private investigator and that he had placed a camera on a utility pole nearby. When

Major returned to retrieve the camera, it was no longer there.[1] (ECF No. 41, p. 1). Plaintiff stated

---

[1] Plaintiff stipulates that Major reported these facts to Defendant Lane but asserts that Major's statements constitute inadmissible hearsay. The United States Supreme Court has stated that Rule 56(e) permits a proper summary judgment to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, the Eighth Circuit held that this statement "does not alter the rule that hearsay evidence alone may not defeat a summary judgment motion." *Financial Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936,

that he found Major's camera and took it back to his home. (ECF No. 41, p. 1). Plaintiff told Defendants Lane and Simpson that he was in possession of the camera and they would need to contact his attorney to retrieve the camera. (ECF No. 41, p. 1). Both Defendants Lane and Simpson left the scene and did not present any charges at that time. (ECF No. 41, p. 1).

When Defendant Lane returned to the Garland County Sheriff's Department, he prepared two reports of the above-mentioned incident. (ECF No. 41, p. 2). The first report was based on the initial call by Plaintiff regarding trespassing, and the second report was based on Major's allegation of theft against Plaintiff. (ECF No. 41, p. 2). Defendant Lane's reports were then referred to the Garland County Sheriff's Department Criminal Investigation Division ("CID"), which was the custom of the Garland County Sheriff's Department. Defendant Terry Threadgill, a CID Corporal, called Defendants Lane and Simpson into his office to discuss the two reports following a discussion with CID Captain, Gary Ashcraft. (ECF No. 41, p. 2). In this meeting, Defendant Threadgill told Defendants Lane and Simpson to return to Plaintiff's property and advise Plaintiff that if he refused to turn over the camera, he would be charged with theft of property. (ECF No. 41, p. 2). Defendants state that this procedure was outside the normal custom and practice of the Garland County Sheriff's Department. In similar situations, the CID would determine whether there were sufficient facts to lead to an arrest warrant. (ECF No. 41, p.2). If not, the CID would decline to press charges. (ECF No. 41, p.2).

---

942 n. 6 (8th Cir.1990), *declined to follow on other grounds, Chicago Ins. Co. v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 929 F.2d 372 (8th Cir.1991). As stated in Defendants' Statement of Undisputed Material Facts, Major had placed a camera on a utility pole, which was no longer there. (ECF No. 41, pp. 1-2). If Major were called to testify at trial, his testimony could possibly constitute hearsay because the statement to Defendant Lane tends to prove the truth of the matter asserted—that Major placed a camera on a utility pole and could not find it. However, there are other potential reasons this testimony may be used at trial that do not constitute hearsay and have not been addressed by Defendants at this time. Accordingly, the Court notes Plaintiff's objection to this testimony, but will not render a decision on its admissibility.

On May 5, 2016, Defendants Lane and Simpson went back to Plaintiff's business property and told Plaintiff that if he did not return the camera, he would be charged with theft. (ECF No. 41, p. 2). Defendants state that Plaintiff became irate, refused to cooperate, and was subsequently arrested for disorderly conduct based on his conduct of yelling, cursing, and swinging his arms about wildly. (ECF No. 34, p. 3). Plaintiff disputes this characterization of his behavior and states that he was not irate and did not swing his arms around wildly. (ECF No. 41, p. 2).[2] Plaintiff argues that Defendants Lane and Simpson did not have probable cause to arrest him for disorderly conduct on his private business property. Defendants argue that they had probable cause to arrest Plaintiff for disorderly conduct, but even if they did not, they had probable cause to arrest Plaintiff for theft.

On March 5, 2019, Plaintiff filed the present action seeking relief pursuant to Title 42 U.S.C. § 1983. Plaintiff alleges that Defendants Lane and Simpson abused the legal process and unlawfully arrested him at the direction of Defendant Threadgill. Plaintiff brings claims for violation of his First, Fourth, and Fourteenth Amendment rights, violations of the Arkansas Civil Rights Act, Civil Conspiracy, Abuse of Process, and Malicious Prosecution.

On March 17, 2021, Defendants filed the instant Motion for Summary Judgment. (ECF No. 32), asserting that they are entitled to summary judgment on the basis of qualified immunity. Defendants also assert that no genuine dispute of material fact exists regarding Plaintiff's official capacity claim and remaining state law claims.

## II. LEGAL STANDARD

The standard for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine

---

[2] Plaintiff provided the Court with a video showing the end of this encounter where Plaintiff appears to be in the process of being arrested. In that moment, Plaintiff appears to be calm, but the moments leading up to the arrest were not shown. In any event, the Court must view the facts in the light most favorable to Plaintiff.

dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Id.* at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

Plaintiff brings claims for violation of his First, Fourth, and Fourteenth Amendment rights,[3] violations of the Arkansas Civil Rights Act,[4] Civil Conspiracy, Abuse of Process, and Malicious Prosecution. The Court will address each in turn.

### A.      Constitutional Violations[5]

Plaintiff asserts that Defendants conducted a warrantless arrest that violated his First, Fourth, and Fourteenth Amendment rights. Plaintiff brings this claim against Defendants Threadgill, Lane, and Simpson in their individual and official capacities as well as Defendant Sheriff Mike McCormick in his official capacity.

### 1.      Individual Capacity Claims

Plaintiff claims that the warrantless arrest conducted by Defendants Lane, Simpson, and Threadgill violated his First, Fourth, and Fourteenth Amendment rights. Defendants assert that they are entitled to summary judgment on these claims because they are entitled to qualified immunity.

Qualified immunity shields a government official from liability and the burdens of litigation unless the official's conduct violates a clearly established constitutional or statutory right

---

[3] The Court interprets Plaintiff discussing his Fourth and Fourteenth Amendment Claims interchangeably as Plaintiff is using his claim for violation of his Fourteenth Amendment rights as a vehicle for his allegation that Defendants violated his Fourth Amendment rights. The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states through the Fourteenth Amendment. *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1992). Thus, the Court will address Plaintiff's Fourteenth Amendment Claim in conjunction with his Fourth Amendment claim.

[4] The Arkansas Civil Rights Act (ACRA) directs Arkansas courts to "look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983." Ark. Code Ann. § 16-123-105(c). We therefore analyze Plaintiff's federal and ACRA claims co-extensively using federal standards. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) ("Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as [federal] claims." (citing Ark. Code Ann. § 16-123-103(c)); *see also Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (holding that "because [the appellant] did not explain why [her] ACRA claims warranted separate analysis, the district court did not err in dismissing the ACRA claims alongside the § 1983 claims" (citing *Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007)).

[5] Plaintiff does not distinguish between Defendants so the Court will refer to Defendants collectively.

of which a reasonable person would have known. *Truong v. Hassan*, 829 F.3d 627, 630 (8th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). Qualified immunity is a legal question for the court, not the jury, to decide in the first instance based either on the allegations or, if material facts are in dispute, on the facts found by the jury. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir.2012). *See also Littrell v. Franklin*, 388 F.3d 578, 584-85 (8th Cir.2004).

### a.        Fourth Amendment Claim

***Constitutional Violation***

Plaintiff alleges that Defendants unlawfully arrested him because he was arrested without a warrant and without probable cause. The Fourth Amendment to the Constitution protects the right of people to be "secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment includes the right to be free from arrest without probable cause. *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999).

Defendants argue that they are entitled to qualified immunity because the arrest was supported by probable cause, meaning that "the totality of the circumstances at the time of the arrest [were] sufficient to lead a reasonable person to believe that [Plaintiff] [had] committed . . . an offense." *Hoyland v. McMenomy*, 869 F.3d 644, 652 (8th Cir. 2017) (internal quotation marks omitted). Further, Defendants argue that qualified immunity "gives government officials breathing

6

room to make reasonable but mistaken judgments." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (per curiam) (internal quotation marks omitted).

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause. *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2017). Probable cause to make a warrantless arrest exists "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ehlers*, 846 F.3d at 1009. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.'" *Id*.

In the present case, Defendants Lane and Simpson returned to Plaintiff's business property and told him that he must return the camera to Major or else he would be issued a citation for theft of property. Plaintiff told Defendants that the camera was in the possession of his attorney. (ECF No. 32-3, p. 25-27). Defendants then proceeded to ask Plaintiff for his information in order to issue a citation for theft. (ECF No. 32-3, p. 30, 11-23). When asked, Plaintiff refused to give Defendants any information needed for a citation. *Id*. Plaintiff states that there was no need to provide this information as he had already provided it in his initial complaint of trespass to the police. (ECF No. 41, p. 2). When Plaintiff refused to give Defendants the camera or his information, Defendant Lane placed a call to Defendant Threadgill who instructed him to arrest Plaintiff. (ECF No. 32-3, p. 32-33). Defendants allege that Plaintiff became irate and refused to cooperate, so they arrested him for theft and disorderly conduct. (Ex. 2, p. 20, 22, 23, 24, 25, 27).  Plaintiff disputes this and states that he did not wave his arms or use foul language. (Ex. Boston's Dep, p. 38, 11-21).

In viewing these facts in the light most favorable to Plaintiff, Plaintiff told Defendants that he had taken possession of the camera that was allegedly stolen from Major and gave it to his

attorney. Even though a dispute remains as to whether Plaintiff was calm or irate before the arrest, it is reasonable for Defendants to believe that probable cause existed to arrest Plaintiff for theft. Pursuant to A.C.A. § 5-36-103, a person commits theft of property if he or she knowingly: (1) takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or (2) obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. Ark. Code. Ann. § 5-36-103 (2013). It is objectively reasonable for Defendants to interpret Plaintiff's statements that he was in possession of the camera and refused to return it as an admission of theft in violation of A.C.A. § 5-36-103. Additionally, Plaintiff told the officers during their visit that he had given the camera in question to his attorney. Even if Defendants' finding of probable cause was mistaken, a reasonable officer in the position of either Defendant would consider Plaintiff's statements and interpret them to mean that Plaintiff had committed theft. Thus, Defendants had arguable probable cause to arrest Plaintiff for theft in violation of A.C.A. § 5-36-103. The facts remain in dispute as to whether Defendants had probable cause or arguable probable cause to arrest Plaintiff on the charge of disorderly conduct, but that dispute is not material because Defendants had at least arguable probable cause to arrest Plaintiff for theft.

Accordingly, Plaintiff's Fourth Amendment right against unreasonable searches and seizures was not violated when Defendants arrested him for theft. However, even if the Court concluded a constitutional violation was present, Plaintiff's claim would fail because the constitutional right was not clearly established.

***Clearly Established Right***

In determining whether Plaintiff's constitutional right was clearly established at the time of Defendants' alleged misconduct, the Court looks to the objective legal reasonableness of the

defendants' actions, assessed in light of the legal rules that were clearly established at the time it was taken. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A constitutional or statutory right is clearly established if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640. In order to overcome qualified immunity, Plaintiff must prove "in the light of pre-existing law the unlawfulness [of Defendants' conduct was] apparent. *Id*. A legal principle must have a sufficiently clear foundation in then-existing precedent. *Johnson v. City of Minneapolis*, 901 F.3d 963, 971 (8th Cir. 2018)(quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018)). While the case need not be "directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." *Wesby*, 138 S.Ct. at 590.

In *Johnson v. City of Minneapolis*, the Eighth Circuit held that in order for a constitutional right to be clearly established for purposes of overcoming qualified immunity, case law must be established at the time of the alleged violation. *Johnson*, 901 F.3d at 971. The Court interprets this to mean that outside of an obvious constitutional violation, identifying a case where an officer acted under similar circumstances and was held to have violated a constitutional right is crucial. Here, Plaintiff has not pointed the Court to a case where an officer acted under similar circumstances and was held to have violated a constitutional right. Thus, even if the Court found a constitutional violation, the Court cannot find that the right was clearly established at the time the alleged violation occurred.

Thus, Defendants are entitled to qualified immunity on this claim and its associated state claims. Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's Fourth and Fourteenth Amendment claims brought against them in their individual capacities.

### b.     First Amendment Claim

Plaintiff argues that his First Amendment rights were violated because he was engaged in protected speech and was subsequently arrested. Defendants argue that they are entitled to qualified immunity. As previously mentioned, the Court must evaluate (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)).

In determining whether Plaintiff's constitutional right was clearly established at the time of Defendants' alleged misconduct, the Court looks to the objective legal reasonableness of the defendants' actions, assessed in light of the legal rules that were clearly established at the time it was taken. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). A constitutional or statutory right is clearly established if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640. In order to overcome qualified immunity, Plaintiff must prove "in the light of pre-existing law the unlawfulness [of Defendants' conduct was] apparent. *Id*.

In the present matter, Plaintiff alleges that he engaged in protected speech that was then retaliated against when Defendants placed him under arrest. Plaintiff's First Amendment retaliatory arrest claim requires him to show that: (1) he engaged in protected activity; (2) Defendants took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; (3) the adverse action was at least partially motivated by Plaintiff's

exercise of protected activity; and (4) Defendants lacked probable cause or arguable probable cause to arrest. *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) (*citing Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014)).

Plaintiff's claim fails on several grounds. First, Plaintiff does not provide factual evidence of the speech he was engaged in and whether that speech is protected. Second, as previously mentioned, Defendants had arguable probable cause to arrest Plaintiff for theft. Therefore, Plaintiff's First Amendment retaliatory arrest claim fails. Accordingly, the Court finds that Defendants are entitled to qualified immunity, and summary judgment regarding Plaintiff's First Amendment claim brought against them in their individual capacities should be granted.

### 2.    Official Capacity

Plaintiff also brings a claim against Defendants in their official capacities and contends that the Garland County Sheriff's Department failed to train its officers. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). Plaintiff brings this claim against all Defendants who were employed by the Garland County Sheriff's Department at the time of the alleged incident. Thus, Plaintiff's official capacity claim is against Garland County.

When a plaintiff can point to a municipal policy that either "violates federal law, or directs an employee to do so," "no evidence is needed other than a statement of the municipal policy and its exercise" to establish a constitutional violation. *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (*citing Szabla v. City of Brooklyn Park Minn*., 486 F.3d 385, 389-90 (8th Cir. 2007)). However, when a plaintiff alleges an unwritten or unofficial policy, there must be "evidence of . . . a practice, so permanent and well-settled so as to constitute a custom, that existed." *Id*. (*citing Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007)). To establish a claim for

"custom" liability, Plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir.2014) (*citing Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3s 825, 828 (8th Cir.2013)).

Plaintiff alleges that the Garland County Sheriff's Department had a procedure for investigating matters and issuing arrest warrants at the time of the alleged incident and that Defendants deviated from said procedure.[6] As previously mentioned, Defendants state that the normal procedure after an incident is that the deputy submits an incident report, and the CID determines whether there are sufficient facts to obtain an arrest warrant or declines to press any charges. (ECF No. 32-2, p. 18, 8-24, ECF No. 32-3, p. 19, 23 – p. 20, 15). Here, Defendants have stated that they deviated from that policy when Defendant Threadgill instructed Defendants Lane and Simpson to go to Plaintiff's property without submitting the matter to the CID. Additionally, Defendant Simpson stated in his deposition that this was the only time in his experience that this procedure had been deviated from.[7] (ECF No. 32-3, p.20, 3-9). However, Plaintiff has not demonstrated the existence of a continuing, persistent pattern of unconstitutional conduct. Thus, even if Defendants did on this occasion deviate from the custom policy followed in the Garland County Sheriff's Department, Plaintiff has failed to show that it was common or widespread throughout the department.

---

[6] Neither party has directed the Court to a statement or specific policy, thus the Court interprets this aforementioned procedure to be a custom policy.
[7] When Defendant Simpson gave his deposition on February 9, 2021, he stated he had been with the Garland County Sheriff's Department for approximately ten (10) years.

Accordingly, Defendants are entitled to summary judgment in regard to this official capacity claim and its associated state claims brought against them in their official capacities.

**B.      State Law Claims**

Because the Court has found that Defendants are entitled to summary judgment on Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction on the remaining state law claims.

### IV. CONCLUSION

For reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED**, and Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 7th day of May, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge